## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAUDENBACH PERIODONTICS AND DENTAL IMPLANTS, LTD | : : | CIVIL ACTION NO. 2:20-cv-02029 |
| PLAINTIFF, | : | |
| v. | : : | |
| LIBERTY MUTUAL INSURANCE GROUP; LIBERTY MUTUAL INSURANCE COMPANY; LIBERTY MUTUAL INSURANCE; AND WEST AMERICAN INSURANCE COMPANY | : : : : : : | |
| | : | COMPLAINT |
| DEFENDANTS. | : | JURY TRIAL DEMANDED |

## **FIRST AMENDED COMPLAINT**

Plaintiff, Laudenbach Periodontics and Dental Implants, Ltd., by way of Complaint, brings this action against Defendants, Liberty Mutual Insurance Group, Liberty Mutual Insurance Company, Liberty Mutual Insurance, and West American Insurance Company, and alleges as follows:

## **NATURE OF THE CASE**

1. Plaintiff owns and operates Laudenbach Periodontics and Dental Implants, Ltd., a dental practice located in Philadelphia, Pennsylvania.

2. To protect the business from property damage and the loss of income in the event of a sudden suspension of operations for reasons outside of its control, Plaintiff purchased commercial multiple peril insurance from Defendant, Liberty Mutual, including specialty property coverage. A copy of the policy is attached as Exhibit 1.

3. Plaintiff's insurance policy is an "all-risk" policy that provides coverage for all non-excluded business losses.

4.      The policy expressly includes "Business Income" coverage which promises to pay for loss due to the necessary suspension of operations following loss to property and "Civil Authority" coverage which promises to pay for losses caused by a civil or governmental authority that prohibits access to the covered property.

5.      The policy also provides "Extra Expense" coverage which promises to pay for expenses incurred to minimize losses during the suspension of business operations.

6.      On or about March 16, 2020, Plaintiff was forced to suspend or reduce business operations following an order from Pennsylvania Governor Tom Wolf mandating the closure of all non-life sustaining businesses in the Commonwealth in an effort to protect the public from the global pandemic caused by COVID-19, a highly contagious respiratory virus that has upended daily life and infected more than 2,000,000 people throughout the United States.

7.      Having faithfully paid the policy premiums, Plaintiff made a claim for business interruption, civil authority and/or extra expense coverage to recoup substantial, ongoing financial losses directly attributed to a series of COVID-19 closure orders.

8.      By letter dated March 27, 2020, Defendant wrongfully denied Plaintiff's claim as follows:

> "In an effort to alert you to the basis of the denial of coverage, we list below the grounds under which all aspects of the claim are not covered under the policy. It is our intent to incorporate by reference all of the terms of the policy through this denial of coverage letter. Based upon the information available to date, the grounds for the denial of coverage under the policy, or under applicable law, with respect to the claim, include, but are not limited to, the following:
>
> The policy provides Business Income coverage when there is a suspension of your operations at the described premises and results from a covered cause of loss. The order that was issued by the Pennsylvania Dental Association to discontinue dental procedures was to prevent the exposure of COVID-19 and is not related to any direct physical damage to the business personal property or the building. The Civil Authority Additional Coverage is only applicable when access to the described premises is prohibited when there is direct physical damage to other property, not on the described

premises, from a covered loss. The order to discontinue routine dental procedures was not due to physical loss or damage nor did it prohibit access to the described premises. It was issued to limit the spread of Coronavirus (COVID-19). The policy specifically excludes losses caused by or resulting from a virus and from contamination.

Based on the above we find no coverage under the terms and conditions of your policy for the costs claimed in connection with your asserted claim and therefore deny your claim. In view of the absence of coverage, we make no comment relative to the amount of loss or damage but include those issues within the rights reserved."
The letter is attached as Exhibit 2.

9. Through this action, Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §2201 that the subject policy covers Plaintiff's financial losses. Plaintiff further seeks damages for breach of contract on the basis that Defendant's denial of coverage runs afoul of the language of the policy and/or the public policy of this Commonwealth.

## **THE PARTIES**

10. Plaintiff, Laudenbach Periodontics and Dental Implants, Ltd. (hereinafter "Plaintiff" and/or "Laudenbach"), is a professional corporation, organized and existing under the laws of Pennsylvania with a physical address and/or principal place of business at 1520 Locust Street, Suite 600, Philadelphia, Pennsylvania 19102.

11. Defendant, Liberty Mutual Insurance Group, a Massachusetts corporation, maintained a principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.

12. Defendant, Liberty Mutual Insurance Company, a Massachusetts corporation, maintained a principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.

13. Defendant, Liberty Mutual Insurance, a Massachusetts corporation, maintained a principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.

14. Defendant, West American Insurance Company, a Massachusetts corporation and subsidiary of Liberty Mutual, maintained a principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.

15. Liberty Mutual Insurance Group, Liberty Mutual Insurance Company, Liberty Mutual Insurance, and West American Insurance Company are collectively referred to herein as "Defendant" and/or "Defendants" and/or "Liberty Mutual".

## JURISDICTION

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because a complete diversity of citizenship exists between Plaintiff and Defendants and the amount in controversy is greater than $75,000.

17. Plaintiff is a citizen of Pennsylvania.

18. Each Defendant is a citizen of Massachusetts.

19. This Court has personal jurisdiction over Defendants because at all relevant times Defendants engaged in substantial business activities in and derived substantial revenue from business activities within the Commonwealth of Pennsylvania, including soliciting, transacting and conducting insurance business (including the subject policy) and administering claims within the Commonwealth. Defendants have purposely availed themselves of the privilege of conducting business in this forum by maintaining continuous and systematic contacts with this forum.

20. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial portion of the acts which gave rise to this lawsuit occurred in this District. Venue is also proper pursuant to 28 U.S.C. §1391(b)(3) because Defendants are subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

A. **PLAINTIFF'S INSURANCE COVERAGE**

21. On or about January 1, 2020, Defendant entered into a contract of insurance with the Plaintiff, whereby Plaintiff agreed to make payments to Defendant in exchange for Defendant's

promise to indemnify the Plaintiff for losses, including, but not limited to, business income losses at 1520 Locust Street, Suite 600 in Philadelphia, Pennsylvania (the "Covered Property"), which is owned, managed, and/or controlled by the Plaintiff.

22. The Covered Property is insured under Policy number BZW569172845, issued by Defendant (hereinafter the "Policy").

23. Plaintiff did not participate in the drafting or negotiation of the words used in the Policy.

24. As the insured, Plaintiff had no leverage or bargaining power to alter or negotiate the terms of the Policy.

25. The Policy provides (among other things) property, business personal property, business income and extra expense, civil authority order, and additional coverages.

26. Plaintiff faithfully paid the policy premiums and reasonably expected that the business interruption, extra expense and/or civil authority coverage provided by Defendant would protect against losses in the event that state or local officials ordered the closure of its business due to public safety concerns.

27. The Policy is an all-risk policy.

28. Defendant agreed to "pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." Ex. 1, p. 1 of 61, Section I.A. The policy defines Covered Causes of Loss as direct physical loss or damage "unless the 'loss' is excluded or limited" by the Policy. Ex. 1, p. 2 of 61.

29. In the Business Income (and Extra Expense) Coverage Form, Defendant agreed to pay for Plaintiff's actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by direct physical loss or damage. Ex. 1, p. 8

of 61, Section I.A.f(2). A "slowdown or cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Defendant agreed to pay for loss of Business Income during the "period of restoration" that begins at the time of direct physical loss or damage. Ex. 1, p. 7 of 61, Section I.A.f(1).

30. "Business income" means net income (profit or loss) before tax that Plaintiff would have earned if no physical loss or damage had occurred as well as continuing normal operating expenses incurred.

31. In the Business Income (and Extra Expense) Coverage Form, Defendant also agreed to pay necessary Extra Expense that Plaintiff incurred during the "period of restoration" that the insureds would not have incurred if there had been no direct physical loss or damage to the Covered Property.

32. "Extra expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

33. In the Business Income (and Extra Expense) Coverage Form, Defendant also agreed to "pay for the actual loss of 'Business Income'" that Plaintiff sustains "and any Extra Expense . . . caused by action of civil authority that prohibits access to" the Covered Property when a Covered Cause of Loss causes damage to property near the Covered Property, the civil authority prohibits access to property immediately surrounding the damaged property, the Covered Property is within the prohibited area, and the civil authority action is taken "in response to dangerous physical conditions." Ex. 1, p. 9 of 61, Section I.A.5(i).

34. The word "damage" is not defined in the policy, therefore it should be interpreted to have its normal and ordinary meaning. Because the policy uses the term "direct physical loss of or damage to" property in the Business Income coverage form, but only refers to "damage" in

the Civil Authority coverage form, the meaning of "damage" is much expanded. The damage, as that word is commonly used, need neither be direct nor physical. Indirect, non-physical damage is all that is required.

35. Separate from the above, within the insurance industry and unknown to Plaintiff, the word "loss" and the word "damage" have a customary usage more expansive than "loss" and "damage" as used in Defendant's denial letter and includes "contamination".

36. In addition, the words "loss" and/or "damage" are not defined in the policy, are used for different purposes within the policy, and have more than one potential meaning. "Loss" and/or "damage" are not synonymous. In this policy "damage" is used with the disjunctive "or" when paired with "loss" and therefore must have a different meaning than "loss". The words "loss" and "damage" are ambiguous as used by Defendant.

37. Losses caused by COVID-19 and the related closure orders issued by local, state and federal authorities triggered the Business Income, Extra Expense and Civil Authority provisions of the Policy.

**B. THE COVID-19 PANDEMIC**

38. On March 11, 2020, the World Health Organization officially declared COVID-19 a global pandemic.

39. COVID-19 is a cause of real physical loss and damage to Covered Property.

40. COVID-19 is a physical substance.

41. COVID-19 remains stable and transmittable in aerosols for up to three hours, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel.[1]

---

[1] *See e.g.* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last accessed May 23, 2020).

42.     The ability of the deadly virus to physically infect and remain on surfaces of objects or materials, i.e. "fomites," for up to twenty-eight (28) days has prompted health officials in countries like China, Italy, France and Spain to disinfect and fumigate public areas before reopening them.

43.     To avoid the increased risk of contracting the virus in congregate environments, the U.S. Centers for Disease Control and Prevention ("CDC") advised against gatherings of more than 10 people.

## C. THE COVERED CAUSE OF LOSS

### 1. Physical Loss

44.     Losses due to the COVID-19 pandemic are a Covered Cause of Loss under the Policy.

45.     The presence of virus or disease can constitute physical damage to property, as the insurance industry has recognized since at least 2006. When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry's drafting arm, Insurance Services Office, Inc. ("ISO"), circulated a statement to state insurance regulators that stated as follows:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage.

46. The COVID-19 pandemic caused direct physical loss of or damage to the Covered Property under the Policy.

47. The COVID-19 pandemic renders the Covered Property unsafe, uninhabitable, or otherwise unfit for its intended use, which constitutes direct physical loss.

48. Plaintiff's loss of use of the Covered Property also constitutes direct physical loss.

49. Plaintiff's business income loss coverage within the Policy was triggered.

## 2. Civil Authority Orders

50. The presence of COVID-19 has prompted civil authorities throughout the country to issue orders mandating the suspension of non-essential businesses across a wide range of industries, including civil authorities with jurisdiction over Plaintiff's business.

51. On March 6, 2020, Pennsylvania Governor Tom Wolf signed an emergency disaster declaration triggering a public health state of emergency in the Commonwealth due to COVID-19. *See* the Declaration attached as Exhibit 3.

52. On March 16, 2020, the City of Philadelphia announced the closure of all non-essential businesses, including Plaintiff's periodontist practice. Order attached as Exhibit 4.

53. On March 19, 2020, Pennsylvania Governor Tom Wolf issued an Order requiring all non-life sustaining businesses in the Commonwealth to cease operations and close all physical locations until further notice. Life-sustaining businesses that were permitted to remain open were required to follow "social distancing practices and other mitigation measures defined by the Centers for Disease Control." *See* the Order attached as Exhibit 5.

54. On March 22, 2020, Philadelphia Mayor Jim Kenney issued an Emergency Order Temporarily Prohibiting Operation of Non-Essential Business and Congregation of Persons to

Prevent the Spread of 2019 Novel Coronavirus, ordering the closure of all businesses except those previously listed by Governor Wolf as Life-Sustaining Businesses. Order attached as Exhibit 6.

55. On March 23, 2020, Governor Wolf issued a Stay-at-Home Order for residents of Philadelphia, Allegheny, Bucks, Chester, Delaware, Monroe and Montgomery Counties. *See* the Order attached as Exhibit 7

56. On March 26, 2020, the Pennsylvania Department of Health amended its mandate, prohibiting all non-emergent dental procedures in the absence of negative pressure rooms and N95 masks– equipment that periodontists like Laudenbach do not have. Order attached as Exhibit 8.

57. On April 1, 2020, Governor Wolf extended the Stay-At-Home Order to the entire Commonwealth of Pennsylvania. *See* the Order attached as Exhibit 9.

58. These Orders and proclamations, as they relate to the closure of all "non-essential businesses" evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places such as Plaintiff's business where the requisite contact and interaction causes a heightened risk of the property becoming contaminated by COVID-19.

59. Plaintiff's business income loss was triggered with each restrictive civil authority action and order which prohibited access to the Covered Property.

60. Further, Plaintiff's Covered Property suffered "direct physical loss or damage" due to the Governor of Pennsylvania's Order (and other local governmental orders) mandating that Plaintiff discontinue its primary use of the Covered Property. The Governor's Order, in and of itself, constitutes a Covered Cause of Loss within the meaning of the Policy.

### 3. The Virus Exclusion

61. The Policy contains a coverage exclusion for "loss or damage caused by or resulting from any virus, bacterium or other microorganism" (Form CP 01 40 07 06) (the "Virus Exclusion").

62. The Virus Exclusion does not preclude coverage for Plaintiff's claim under the Policy.

63. The insurance industry, through the ISO, and including Defendant, understood that the presence of a virus caused damage to property which would trigger coverage under the business income or Civil Authority coverage forms.

64. Nevertheless, through the ISO, the industry represented to the Insurance Department that there was no coverage for damage caused by viruses under the ISO policies, and therefore, the virus exclusion did not change the policy or reduce coverage. No premium reduction was associated with the addition of the virus exclusion.

65. Plaintiff did not negotiate for the inclusion of the Virus Exclusion.

66. Plaintiff did not receive any premium reduction for the inclusion of the Virus Exclusion.

67. Plaintiff did not receive any benefit or consideration for the inclusion of the Virus Exclusion.

68. Plaintiff did not receive the benefit of any bargain related to the Virus Exclusion.

69. Defendant received the unilateral benefit of excluding coverage for a risk while also receiving the same or even greater premium for the lesser coverage.

70. A business and/or property owner who was even aware of the virus exclusion would conclude that the exclusion related to liability claims against the insured for <u>transmitting</u> the virus, not property damage claims.

71. To the extent that the governmental orders, in and of themselves, constitute direct physical loss of or damage to Plaintiff's Covered Property, and/or preclusion of access to the Covered Property because of a Civil Authority order related to damage to nearby properties, the Virus Exclusion simply does not apply.

72. Defendant should be estopped from enforcing the Virus Exclusion, on principles of regulatory estoppel, as well as general public policy.

73. In 2006, two insurance industry trade groups, Insurance Services Office, Inc. ("ISO") and the American Association of Insurance Services ("AAIS"), represented hundreds of insurers in a national effort to seek approval from state insurance regulators for the adoption of the Virus Exclusion.

74. In their filings with the various state regulators (including Pennsylvania), on behalf of the insurers, ISO and AAIS represented that the adoption of the Virus Exclusion was only meant to "clarify" that coverage for "disease-causing agents" has never been in effect, and was never intended to be included, in the property policies.

75. Specifically, in its "ISO Circular" dated July 6, 2006 and entitled "New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria," ISO represented to the state regulatory bodies that:

> While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage to create sources of recovery for such losses, contrary to policy intent.

76. Similarly, AAIS, in its "Filing Memorandum" in support of the Virus Exclusion, represented:

> Property policies have not been, nor were they intended to be, a source of recovery for loss, cost or expense caused by disease-causing agents. With the possibility of a pandemic, there is concern that claims may result in efforts to expand coverage to create recovery for loss where no coverage was originally intended . . .
>
> This endorsement clarifies that loss, cost, or expense caused by, resulting from, or relating to any virus, bacterium, or other microorganism that causes disease, illness, or physical distress or that is capable of causing disease, illness, or physical distress is excluded…

77. The foregoing representations made by the insurance industry were false.

78. By 2006, the time of the state applications to approve the Virus Exclusion, courts had repeatedly found that property insurance policies covered claims involving disease-causing agents, and had held on numerous occasions that any condition making it impossible to use property for its intended use constituted "physical loss or damage to such property."

79. Upon information and belief, the insurance department relied on the industry's and Defendant's representation when the department approved the Virus Exclusion for inclusion in standard comprehensive policies without a reduction in premiums to balance a reduction in coverage.

80. The foregoing assertions by the insurance industry (including Defendant), made to obtain regulatory approval of the Virus Exclusion, were misrepresentations and for this reason, among other public policy concerns, Defendant should now be estopped from enforcing the Virus Exclusion to avoid coverage of claims related to the COVID-19 pandemic.

81. In securing approval for the adoption of the Virus Exclusion by misrepresenting to the state regulators that the Virus Exclusion would not change the scope of coverage, Defendant

effectively narrowed the scope of the insuring agreement without a commensurate reduction in premiums charged.

82. Under the doctrine of regulatory estoppel, the Court should not permit Defendants to benefit from this type of duplicitous conduct before the state regulators.

83. Upon information and belief, Defendant has denied, or will deny, all claims for coverage under their "all-risk" property damage policies issued by Defendant.

84. Defendant's denial of lost business income claims has left Plaintiff without vital coverage acquired to ensure the survival of their businesses during this temporary suspension of operations.

85. Meanwhile, Defendant receives the benefit of an exclusion for which Plaintiff and similarly situated insureds received no bargain, reduction of premiums or any benefit whatsoever.

### D. IMPACT ON PLAINTIFF

86. On or about March 16, as a direct result of the COVID-19 pandemic and closure Orders referenced herein, Plaintiff was forced to close the doors of its "non-life sustaining" business.

87. Because people—employees, patients and others— frequent all areas of Plaintiff's property, there is an ever-present risk that the Covered Property is contaminated and would continue to be contaminated if the business remained open to the public.

88. As a periodontist practice, Plaintiff operates in a close environment where patients, staff and doctors are directly next to each other, and are using tools, instruments and surfaces which must be free from contaminants.

89. Because business is conducted in an enclosed building, the Covered Property is more susceptible to being or becoming contaminated, as respiratory droplets are more likely to

remain in the air or infect surfaces within the Covered Property for far longer or with significantly increased frequency as compared to facilities with open-air ventilation.

90. Dental and periodontist procedures produce saliva particles which aerosolize, meaning they can become fine and hang in the air for extended periods of time.

91. Plaintiff's practice is highly susceptible to contamination and damage.

92. Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the activities of the employees and patients require them to interact in close proximity to the property and to one another.

93. The virus is physically impacting the Covered Property. Any effort by the Defendants to deny the reality that the virus has caused physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiff and the public.

94. As a direct result of the COVID-19 pandemic and the Closure Orders, Plaintiff has incurred, and continues to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy

95. The covered losses incurred by Plaintiff and owed under the Policy increase daily.

96. Plaintiff submitted a claim to Defendants under the Policy due to the presence of COVID-19 and the closure Orders described herein.

97. On March 27, 2020, Defendants wrongfully denied Plaintiff's claim.

98. A declaratory judgment that the Policy provides coverage will ensure that Plaintiff's reasonable expectations of coverage are met and prevent Plaintiff from being left without vital coverage acquired to ensure the survival of the business.

99. A declaratory judgment that the Policy provides coverage will also further the public policy of this Commonwealth.

## CAUSES OF ACTION

### COUNT I
### DECLARATORY RELIEF

100. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

101. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

102. Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2751 (3d ed. 1998).

103. Plaintiff requests a Declaratory Judgment to affirm that the Policy provides business income coverage because of losses attributable to civil authority actions, and because the denial violates public policy.

104. Plaintiff further requests a Declaratory Judgment that the Exclusion of Loss Due to Virus or Bacteria does not apply to the business income losses incurred by Plaintiff, and that Defendant is estopped from enforcing the Virus Exclusion.

105. Plaintiff's interest in the Policy and the declaratory relief sought is direct, substantial, quantifiable, and immediate.

106. An actual controversy has arisen between Plaintiff and the Defendants as to the rights, duties, responsibilities and obligations of the parties under the Policy to reimburse Plaintiff

for its business income loss. Plaintiff contends and, upon information and belief, the Defendants dispute and deny that:

    a. The closure Orders described herein constitute a prohibition of access to the Covered Property;

    b. The prohibition of access by the closure Orders described herein has specifically prohibited access as defined in the Policy;

    c. The closure Orders described herein trigger coverage;

    d. The Virus Exclusion is void as against public policy as it pertains to the closure Orders described herein;

    e. The Virus Exclusion does not apply to business income loss or losses from an Order of a civil authority;

    f. Defendant is estopped from enforcing the Virus Exclusion;

    g. The Policy provides coverage to Plaintiff for any current and future closures due to physical loss or damage directly or indirectly resulting from COVID-19 under the Civil Authority Coverage; and

    h. The Policy provides business income coverage in the event that COVID-19 has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Covered Property.

107. Resolution of the duties, responsibilities and obligations of the Parties is necessary as no adequate remedy at law exists and a judicial declaration is required to resolve the dispute and controversy.

## COUNT II
### BREACH OF CONTRACT - COMPENSATORY RELIEF

108. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

109. At all times relevant hereto, Plaintiff was an insured under the Policy with Defendants.

110. Plaintiff purchased, elected and paid premiums to Defendants for the property, business income and extra expense, civil authority and additional coverages applicable to the losses claimed in this action.

111. All the information regarding the insured's business and risks thereof was known to the Defendants when the Policy was issued.

112. Plaintiff is entitled to recover all losses caused by COVID-19 and/or civil authority orders.

113. Defendants were advised of Plaintiff's claims and demand for coverage under the Policy.

114. Plaintiff complied with all requirements of the Policy.

115. Defendants are duty bound and obligated to act in good faith towards the insured under the Policy to make fair and reasonable efforts and offers to resolve Plaintiff's claim.

116. Defendants breached the terms and provisions of the Policy by denying the claims of Plaintiff for all losses caused by COVID-19 and the civil authority orders.

117. The breach of the indemnification obligations under the Policy by Defendants has caused Plaintiff to suffer loss and harm.

118. Defendants are required to pay Plaintiff all covered losses caused by COVID-19 and civil authority orders including business income, extra expense, contamination civil authority and other coverages under the Policy.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment against the Defendants and declare, as a matter of law, the following:

    a. The civil authority orders prohibit access to Plaintiff's Insured Premises;

    b. The civil authority orders "prohibit access" as defined in the Policy;

    c. The civil authority coverage applies to Plaintiff due to physical loss or damage at the insured premises or other premises in the immediate area of the Insured Premises;

    d. The Plaintiff is entitled to coverage for business income loss caused by the referenced orders;

    e. The Virus Exclusion is void as against public policy as it pertains to the closure Orders described herein;

    f. The Virus Exclusion does not apply to business income loss or losses from an Order of a civil authority;

    g. Defendant is estopped from enforcing the Virus Exclusion;

    h. The inability to use the insured premises amounts to a physical loss or damage as defined in the Policy;

    i. Defendants' denial of coverage for losses caused by the referenced civil authority orders violates public policy; and

    j. Defendant's denial of coverage for losses caused by the referenced civil authority orders amounts to a breach of contract.

Plaintiff further seeks an Order requiring Defendant to pay Plaintiff all covered losses caused by loss of access to the Insured Premises, including business income, extra expense, contamination, civil authority and other coverages under the Policy; and such other relief as the Court deems appropriate.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 24, 2020                               Respectfully submitted,

                                                      **ANAPOL WEISS**

                                                      /s/ Sol H. Weiss
                                                      Sol H. Weiss, Esquire
                                                      James R. Ronca, Esquire
                                                      Gregory S. Spizer, Esquire
                                                      Ryan D. Hurd, Esquire
                                                      Paola Pearson, Esquire
                                                      One Logan Square
                                                      130 N. 18th Street, Suite 1600
                                                      Philadelphia, PA 19103
                                                      sweiss@anapolweiss.com
                                                      jronca@anapolweiss.com
                                                      gspizer@anapolweiss.com
                                                      rhurd@anapolweiss.com
                                                      ppearson@anapolweiss.com

                                                      Counsel for Plaintiff